IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANTOINETTE GONZALES, CAROLL AUSTIN,
SARAH CLOVER, ANNETTE MORA,
JAMES PRESCETTI, YOLANDA GARCIA,
NICOLE FOSTER, NICOLE BORDLEMAY,
KARI WAITES, and A CLASS OF SIMILARLY
SITUATED CITY EMPLOYEES,

       Plaintiffs,

vs.                                     No. CIV 09-0520 JB/RLP

THE CITY OF ALBUQUERQUE; ED
ADAMS, Chief Administration Officer; and
ESTHER TENENBAUM, Division Manager,
in their individual and official capacities,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs' Motion for Class Action Certification, filed May 12, 2010 (Doc. 49).  The Court held a hearing on July 28, 2010.  The primary issue is whether the Court should certify a class of past, present, and future employees of Defendant City of Albuquerque's Citizen Contact Center ("311-CCC") in an action to determine whether 311-CCC employees should be "classified" employees.  Because terminated 311-CCC employees have a conflict of interest with current 311-CCC employees, and the number of 311-CCC employees terminated is too few for a class action, the Court finds that the Plaintiffs have not met the requirements of rule 23 of the Federal Rules of Civil Procedure and will deny the motion for class certification.  The Court will also grant the Plaintiffs thirty days leave to amend the Complaint to join additional plaintiffs.

## FACTUAL BACKGROUND

Employees of the 311-CCC handle calls from citizens of the City of Albuquerque who call 311.  See Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification at 2, filed June 8, 2010 (Doc. 54)("Defendants' Opposition").  The 311 service is a single telephone number for all non-emergency City of Albuquerque inquiries and services. See City of Albuquerque Official Website: 311, http://www.cabq.gov/311/.  Employees of the 311-CCC must be familiar with all operations and services across City of Albuquerque departments, whereas other City of Albuquerque employees' work, including the work of other call-center employees, does not require such a breadth of knowledge.  See Defendants' Opposition at 3. Plaintiffs Antoinette Gonzales, Caroll Austin, Sarah Clover, Annette Mora, James Pescetti, Yolanda Garcia, Nicole Foster, Nicole Bordlemay, and Keri Waites are former employees of the 311-CCC. Gonzales was a salaried supervisor at the end of her tenure with the 311-CCC, while the other eight plaintiffs were hourly employees.  The Plaintiffs represent that they are aware of twenty-seven terminated 311-CCC employees.  See Plaintiff's [sic] Memorandum in Support of Motion for Class Certification at 2, filed May 13, 2010 ("Plaintiffs' Memo.").  They also represent that the City of Albuquerque employs sixty-two employees.  See Plaintiffs' Memo. at 2.

### 1.      311-CCC Employees are Unclassified.

The 311-CCC employees are unclassified employees.  See Defendants' Opposition at 2. Section 3-1-6(A) of the City of Albuquerque's Merit System Ordinance provides: "All employees in the city service shall be divided into unclassified service and classified service."  Rule 306.2 of the City of Albuquerque's Personnel Rules and Regulations defines "unclassified employees" as "employees at will [who] serve at the discretion of the Chief Administrative Officer . . .  Such employees have no property interest in continued employment and may be terminated for any or no

reason."  Rule 306.2 further provides that unclassified service includes "[a]ny position designated as unclassified by the Chief Administrative Officer."  According to the City of Albuquerque, it made the decision that all 311-CCC employees would be unclassified so that the center could be operated as closely as possible to a high-level private call center.  See Defendants' Opposition at 2.  The City of Albuquerque represents that unclassified status allows it flexibility in wages, benefits, and incentives beyond or different from those applicable to classified employees.  See id. at 2. Unclassified employees at 311-CCC are paid more than classified employees in other City of Albuquerque call centers.  See id. at 3.  The City of Albuquerque is able to tailor specific employee incentives, such as spot bonuses, awards, and social events to reward performance on an immediate or very prompt basis to motivate employees.  See id. at 2.  These incentives would not be possible under City of Albuquerque rules and regulations applicable to classified employees.  See id. at 2.

The City also has an "Intermediation Termination" policy for the 311-CCC.  Plaintiffs' Memo. at 2; Plaintiffs' Exhibit 4, 311 Citizen Contact Center Procedure: Immediate Termination Form at 7, filed May 13, 2010 (Doc. 50-1). The City of Albuquerque contends that the flexibility to hire and discipline 311-CCC employees on an expedited basis is necessary because of the unique aspect of the work performed at the 311-CCC.  See  Defendants' Opposition at 2.

### 2.    The Plaintiffs' Employment at the 311-CCC Ended for Various Reasons.

On or around June 2005, the City of Albuquerque terminated Waites' employment pursuant to its progressive disciplinary procedures because of several performance issues, misconduct, and repeated violations of the City of Albuquerque's attendance policies. See Defendants' Opposition Exhibit 9, Deposition of Keri Waites at 43-47 (taken May 4, 2010), filed June 8, 2010 (Doc. 54-9)("Keri Depo.").

In 2006, Clover went on maternity leave.  She eventually returned to a full-time

schedule after having exhausted her Family and Medical Leave Act, 29 U.S.C. § 2601 through § 2654 ("FMLA") leave.  <u>See</u> Deposition of Sarah Clover at 32 (taken October 14, 2009), filed June 8, 2010 (Doc. 54-4)("Clover Depo.").  According to the City of Albuquerque, throughout her tenure, Clover continuously violated the City of Albuquerque's attendance policies and was placed on a progressive discipline plan.  <u>See</u> Defendants' Opposition at 4.  The City of Albuquerque ultimately terminated Clover for her failure to adhere to its policies.  <u>See</u> Defendants' Opposition Exhibit 1, Deposition of Esther Tenenbaum at 53, 114, 118-119 (taken January 12, 2010), filed June 8, 2010 (Doc. 54-1) ("Tenenbaum Depo.").

In October 2007, Austin requested that the City of Albuquerque place her on medical leave. <u>See</u> Defendants' Opposition Exhibit 2, Deposition of Caroll Austin at 11 (taken October 13, 2009), filed June 8, 2010 (Doc. 54-2)("Austin Depo.").  At that time, the City of Albuquerque informed Austin that she had approximately forty-seven hours of FMLA leave remaining, <u>see</u> Austin Depo. at 11-12, and that, pursuant to the City of Albuquerque's policies, she would be considered to have voluntarily resigned if she did not show up for work following exhaustion of all the leave to which she was entitled, <u>see</u> Tenenbaum Depo. at 55, 92-93, 95.  Austin subsequently exhausted her leave and then did not come to work for three days.  <u>See</u> Austin Depo. At 15-16, 20-23.  The City of Albuquerque therefore terminated Austin's employment, informing her that her services were no longer needed.  <u>See</u> Tenebaum Depo. at 55-56, 91-92, 97.

On or around May 16, 2008, the City of Albuquerque terminated Pescetti's employment because of a citizen's complaint made against him.  <u>See</u> Defendants' Opposition Exhibit 8, Deposition of James Pescetti at 19-20 (taken January 14, 2010), filed June 8, 2010 (Doc. 54-8).

In September 2008, the City of Albuquerque terminated Gonzales' employment as a 311-CCC supervisor.  <u>See</u> Defendants' Opposition at 3.  She was informed that "[her] services with

the City of Albuquerque are no longer needed."   Plaintiffs' Memo. Exhibit 5, Interoffice Memorandum from Tanda Meadors to Antoinette Gonzales (dated September 12, 2008) at 8, filed May 13, 2010 (Doc. 50-1).  The City of Albuquerque represents that she was terminated because: (i) two employees submitted complaints about her; and (ii) she hosted a charity event at the 311-CCC in its name, in contravention of the City of Albuquerque's policies and instruction not to do so.  See Defendants' Opposition at 3; Tenenbaum Depo. at 53-54, 102-104.

In September 2009, the City of Albuquerque terminated Garcia's employment, pursuant to the City of Albuquerque's progressive disciplinary procedures, for performance-related issues.  See Defendants' Opposition Exhibit 7, Deposition of Yolanda Garcia at 10, 26-27 (taken January 13, 2010), filed June 8, 2010 (Doc. 54-7).

On or around November 19, 2009, the City of Albuquerque terminated Bordlemay's employment at the 311-CCC after she mishandled citizen calls.  See Defendants' Opposition Exhibit 5, Deposition of Nicole Bordlemay at 24-25 (taken January 13, 2010), filed June 8, 2010 (Doc. 54-5) ("Bordlemay Depo.").

On or around October 19, 2009, the City of Albuquerque terminated Foster's employment at the 311-CCC because she violated the City of Albuquerque's policy and procedures when she: (i) took personal time in the chill room; and (ii) wore earphones while at work. See Defendants' Opposition Exhibit 6, Deposition of Nicole Foster at 41-42, 47 (taken January 13, 2010), filed June 8, 2010 (Doc. 54-6).

During her tenure, Mora requested and was granted a leave of absence.  The City of Albuquerque subsequently sent Mora a letter advising her that she had exhausted her leave. See Defendants' Opposition Exhibit 3, Deposition of Annette Mora at 22 (taken October 14, 2009), filed June 8, 2010 (Doc. 54-3)("Mora Depo.").  Mora did not, however, return to work after

exhausting her leave; consequently, the City of Albuquerque treated her as having voluntarily resigned under its policies and procedures.  <u>See</u> Tenenbaum Depo. at 60-61, 79.

## **PROCEDURAL BACKGROUND**

On April 8, 2009, Gonzales, Austin, Clover, and Mora, on behalf of themselves and a class of similarly situated city employees, filed a Complaint of Violations of Statutory and Constitutional Law in the Second Judicial District Court, Bernalillo County, New Mexico.  <u>See</u> Doc. 1-1 ("Complaint").  On May 27, 2010, the Defendants removed the case to federal court.  <u>See</u> Notice of Removal, filed May 27, 2010 (Doc. 1).  On October 8, 2009, the Court granted the Plaintiffs' unopposed motion to join Pescetti as a plaintiff.  <u>See</u> Order, filed October 8, 2010 (Doc. 20).  On February 18, 2010, the Court granted the Plaintiffs' unopposed motion to join Garcia, Foster, Bordlemay, and Waites as plaintiffs.  <u>See</u> Order, filed February 18, 2010 (Doc. 40).

The Plaintiffs have brought claims alleging that the City of Albuquerque breached the Plaintiffs' employment contracts, denied them due process and equal protection, and wrongfully terminated the Plaintiffs' employment.  <u>See</u> Complaint ¶¶ 27-42, at 8-10; Plaintiffs' Memo. at 1. In Count I, the Plaintiffs allege that "the City Defendants have breached their contracts of employment with the Plaintiffs, have unreasonably taken disciplinary action without just cause, have denied the Plaintiffs and others their contractually required process, and are liable for damages proximately resulting from those contract violations."  Complaint ¶ 29, at 8.  In Count II, the Plaintiffs allege that the "Defendants have violated and denied the right of due process of Plaintiffs and other similarly situated employees who have been terminated without just cause and have been denied any pre-determination or post-termination process to grieve or appeal the actions against them."  Complaint ¶ 33, at 8.  Count III alleges wrongful termination of employment, because the Plaintiffs were uninformed of their "unclassified" status, and "some or all Plaintiffs have been

discriminated against and terminated for improper and illegal reasons, in violation of their statutory rights and entitlements." Complaint ¶¶ 40-41, at 10.  The Plaintiffs also allege in Count IV that the Defendants violated some Plaintiffs' rights under the FMLA, see Complaint ¶¶ 43-44, at 10, and allege in Count V that the Defendants violated Gonzales' rights under the Fair Labor Standards Act ("FLSA"), see Complaint ¶¶ 45-47, at 10-11.  According to the Complaint, the class that the Plaintiffs seek to represent consists of "all persons who were treated (or are now being treated) as 'unclassified' employees of the City of Albuquerque without good reason or justification, and who have suffered damages and are entitled to injunctive, declaratory, or equitable relief as a result of that treatment."  Complaint ¶ 50, at 11-12.

The Plaintiffs move the Court to certify the case as a class action and grant the Plaintiffs representational status.  See Motion at 3.  They contend that they fully satisfy rule 23's requirements.  In their memorandum in support of the motion for class certification, the Plaintiffs argue that the proposed class of 311-CCC employees and former employees is so numerous that joinder of all members of the proposed class would be impractical.  See Plaintiffs' Memo. at 6. They argue that there are questions of law and fact common to the proposed class, including, but not limited to: (i) whether the Plaintiffs and the proposed class members have a reasonable expectation of continued employment and a right to a hearing concerning disciplinary actions against them; and (ii) whether they are entitled to declaratory and injunctive relief and equitable remedies, including reinstatement and back pay, incidental to that relief.  See id. at 6.  They contend that the Plaintiffs' claims are typical of the proposed class members' claims, and that they will provide adequate and competent representation of the interests of the proposed class.  See id. at 6.

The Plaintiffs further argue that they can satisfy a class under either rule 23(b)(1), 23(b)(2), or 23(b)(3).  They contend that they can represent the claims of other similarly situated class

members and that adjudication of individual claims would be expensive and create the risk of inconsistent adjudications.  See id. at 7-8.  They also argue that declaratory and injunctive relief with respect to each member of the prospective class is appropriate, because the City of Albuquerque has refused to provide due process rights to 311-CCC employees.  See id. at 8.  Further, they contend that important questions of City of Albuquerque policy and law predominate over any questions affecting only individual members, and that a class action would be the best way to resolve the greatest number of employees' interests efficiently and without inconsistencies.  See id. at 8.

In response, the Defendants argue that the Plaintiffs do not meet the rule 23(a) requirements because there is a conflict of interest between former 311-CCC employees -- who have an interest in earning their jobs back and receiving back-pay -- and current employees -- who have an interest in retaining their current, high-paying jobs.  See Defendants' Opposition at 5.  The Defendants contend that there is no commonality between the proposed class and the named Plaintiffs because the facts and legal claims of present employees as a group are different than those of former employees.  See id. at 5.  They also argue that the named Plaintiffs were terminated for varying reasons, rendering their claims insusceptible to class resolution.  See id. at 5.  The Defendants contend that the conflict of interest also shows that the Plaintiffs' claims are not typical.  See id. at 6. Specifically, the Defendants argue that it is against the pecuniary interest of current 311-CCC employees to become classified employees, whereas it is in the interest of the named Plaintiffs and former employees to become classified employees, which would have entitled them to a hearing before termination.  See Defendants' Opposition at 6.  They further argue that the Plaintiffs are not adequate representatives of the proposed class, of which two-thirds is made up of current employees with different interests from former employees like the Plaintiffs.  See Defendants' Opposition at 9. Finally, the Defendants contend that the Plaintiffs also fail to satisfy any of the three class categories

-8-

in rule 23(b).

In reply, the Plaintiffs argue that the proposed class has a shared interest in due-process rights to notice and hearings based on their mutual property interest and expectations of continued employment absent just cause for termination.  <u>See</u> Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Class Action Certification at 1, filed June 30, 2010 (Doc. 59) ("Plaintiffs' Reply").  The Plaintiffs argue that the common issue is the property interest in employment.  <u>See</u> Plaintiffs' Reply at 5.  They argue that the claims meet the typicality requirement because both former and current 311-CCC employees seek to enforce their property interest in their public employment.  <u>See</u> <u>id.</u> at 5.  The Plaintiffs appear to abandon that they satisfy the requirements for a rule 23(b)(1) class, but they argue that they satisfy the requirements for either a 23(b)(2) or 23(b)(3) class.  <u>See</u> <u>id.</u> at 7.  They argue that "it should be apparent that declaratory and injunctive relief, including reinstatement and back pay, are the appropriate and necessary remedy for all the 311 employees." Plaintiffs' Reply at 11-12.  They also argue that a rule 23(b)(3) class is appropriate because the issue whether 311-CCC employees have a property interest in their employment is the predominant issue.  <u>See</u> <u>id.</u> at 12.

At the hearing, the Court inquired whether the Plaintiffs' attorney, Paul Livingston, believes a class of twenty-seven members -- the number of former 311-CCC employees -- is sufficient to move forward with a class action or if joinder would be feasible.  <u>See</u> Transcript of Hearing at 9:15-21 (taken July 28, 2010)("Tr.")(Court).[1]

> THE COURT:  What if I were to say, I just think 27 is too low and I end up saying that I really don't think you can represent the current employees?  How would you want to proceed?  Would you still want to proceed with a class action of 27, or would

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain different page and/or line numbers.

you prefer that I -- that you go out and join the other former employees that want to be part of your lawsuit?

MR. LIVINGSTON:  Well, Your Honor, I think we could go actually either way. Some sort of permissive opt-in process, either after giving notice to the other what would be 18 -- 18 employees who had been terminated.

THE COURT:  Well, you need it to be a 23(b)(3) if you got terminated employees, don't you, to get -- to get damages in this case?

MR. LIVINGSTON:  Well, I think essentially, Your Honor, I would agree with you, that 27 is too small a class to make it worth being a class action. . . .  I think we would pursue it individually if we could have an opportunity to join some additional people that would probably satisfy us.

Tr. at 9:15-10:10.  Mr. Livingston indicated that, in addition to the nine named Plaintiffs, he is aware of eighteen other 311-CCC employees who have been terminated.  See Tr. at 9:22-25 (Livingston).

Mr. Livingston argued, however, that he believes a class of former and current employees is appropriate, because all 311-CCC employees have an interest in having a property right in their employment.  See Tr. at 11:10-15 (Livingston).  Mr. Livingston conceded that the members of the proposed class are not seeking the same relief -- the current employees would not be seeking to have their employment reinstated, nor would they be seeking back pay, unlike the relief that the former employees and the named Plaintiffs are seeking.  See Tr. at 23:11-22 (Livingston, Court).

In response to the Court's question why the City of Albuquerque had not produced affidavits of current employees stating whether they want to be considered classified employees, Edward Bergmann, the City of Albuquerque's attorney, argued that the City of Albuquerque did not produce affidavits from current employees regarding their pecuniary conflict of interest because it is the City of Albuquerque's position that asking current employees to prepare an affidavit stating that they do not wish to become classified employees poses an ethical dilemma and could be perceived as intimidation of potential class members.  See Tr. at 25:25-26:15 (Bergmann).  He argued that

311-CCC employees understand from the time they are hired that they are unclassified employees, which means that they are paid more than employees under the City of Albuquerque's classified employee-compensation structure.  See Tr. at 26:19-27:1 (Bergmann).

> MR. BERGMANN: Mr. Livingston has already said, and I think incorrectly, with all due respect, that the fact that the employees receive more as unclassified employees is some sort of a veiled threat.  That's not the case.  People from almost the beginning of employment, Your Honor, all of the named plaintiffs understood that they were unclassified from day one.  They understood that.  None of them surprisingly or not surprisingly asked the question of the City what does this mean? They all knew that it meant, among other things, that by being unclassified they were paid more than the City compensation structure provided for, for classified employees.  Just as Your Honor pointed out in the federal system, the City has a compensation system which provides for amounts of compensation for various grade level employees.  There may be exceptions in the collective bargaining agreements but these were unrespected employees and so they would be subject to a general City compensation system if classified.

Tr. at 26:16-27:7 (Bergmann).  In response to the Court's question whether 311-CCC employees make more than 911 call-center employees, Mr. Bergmann stated that, although he could not quote the precise difference, the 311-CCC employees make more money than the 911 employees, and it is enough of a difference in pay that could influence employees to leave a classified union-represented position to go to the 311-CCC for higher pay.  See Tr. at 27:14-28:7 (Court, Bergmann).  Mr. Livingston also conceded that 311-CCC employees are paid more than other City of Albuquerque call-center employees.  See Tr. at 22:1-3 ("COURT: So there's this gap in pay.  Is that not true? MR. LIVINGSTON: Well, it is true that they are paid better.").

Mr. Bergmann contended that the burden is on the Plaintiffs to show that there is not a pecuniary conflict between the current 311-CCC employees and the terminated 311-CCC employees; it is not the Defendants' burden to prove the conflict exists.  See Tr. at 29:7-11 (Bergmann).  He argued that the conflict is apparent -- the 311-CCC employees make more money because they are unclassified employees.  See Tr. at 29:9-11 (Bergmann).  He conceded, however,

that there is a common issue of law among the current and former employees -- whether they should be considered classified employees. See Tr. at 31:16-21 (Court, Bergmann). He argued that the conflict of interest destroys the utility of the class action for that common question, and terminated employees should not be permitted to represent the current employees because their interests are divergent. See Tr. at 31:21 (Bergmann); id. at 34:11-13 (Bergmann). Mr. Bergmann represented that the Defendants do not oppose the Court granting leave to the Plaintiffs to join additional plaintiffs. See Tr. at 37:11-13 (Bergmann).

## LEGAL REQUIREMENTS FOR CLASS ACTION CERTIFICATION

Under rule 23, the district court must determine "at an early practicable time," Fed. R. Civ. P. 23(c)(1)(A), whether a suit or a particular claim within a suit satisfies the prerequisites of numerosity, commonality, typicality, and adequacy of representation, see Fed. R. Civ. P. 23(a), and falls within one of the categories of actions maintainable as class actions, see Fed. R. Civ. P. 23(b). A party seeking certification for a lawsuit to proceed as a class action must satisfy rule 23(a)'s four requirements -- numerosity, commonality, typicality, and adequacy -- as well as the requirements of at least one of the three categories described in rule 23(b). See Shook v. El Paso County, 386 F.3d at 368. The party seeking to certify a class bears the burden of proving that all the requirements of rule 23 are met. See Fincher v. Prudential Prop. & Cas. Ins. Co., No. 08-1109, 2010 U.S. App. LEXIS 8134, at *36 (10th Cir. Apr. 20, 2010)(citing Shook v. El Paso County, 386 F.3d 963, 368 (10th Cir. 2004)). Although the party seeking to certify a class bears the burden of proving that all of rule 23's requirements are met, the district court must engage in its own "rigorous analysis" whether "the prerequisites of Rule 23(a) have been satisfied." Gen. Tel. Co. of the S.W. v. Falcon, 457 U.S. 147, 161 (1982). In doing so, the court must accept the substantive allegations of the complaint as true, although it "need not blindly rely on conclusory allegations which parrot

Rule 23," and "may consider the legal and factual issues presented by plaintiff's complaints." J.B. v. Valdez, 186 F.3d 1280, 1290 n.7 (10th Cir. 1999)(quoting 2 H. Newberg & A. Conte, Newberg on Class Actions § 7.26 (3d ed. 1992)).

### 1.      The Requirements of Rule 23(a).

The first inquiry by a court attempting to determine the proprietary of certifying a class action is whether the plaintiff can show the existence of rule 23(a)'s four threshold requirements. See Adamson v. Bowen, 855 F.2d 668, 675 (10th Cir. 1988).  These requirements are that: (i) the class is so numerous that joinder of all members is impracticable; (ii) there are questions of law or fact common to the class; (iii) the claims or defenses of the representatives are typical of the class' claims or defenses; and (iv) the representative parties will fairly and adequately protect the class' interests.  See Fed. R. Civ. P. 23(a).  Although "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," the court's responsibility is to "carefully apply the requirements of Rule 23(a)." Gen. Tel. Co. of the S.W. v. Falcon, 457 U.S. 147, 160 (1982)(citations and quotations omitted).

### a.      Numerosity.

Rule 23(a)(1) asks whether "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Some courts have held that numerosity may be presumed at a certain number; the Tenth Circuit, however, "has never adopted such a presumption." Trevizo v. Adams, 455 F.3d 1155, 1162 (10th Cir. 2006).  The Tenth Circuit has stated that there is "no set formula" to determine whether the numerosity requirement is met; instead it is a fact-specific inquiry best left to the district court's discretion. Rex v. Owens, 585 F.2d 432, 436 (10th Cir. 1978). See Horn v. Associated Wholesale Grocers, Inc., 555 F.2d 270, 275 (10th Cir. 1977) ("Impracticability is dependent not on any arbitrary limit but upon the circumstances surrounding

-13-

the case."). "Indeed, because it is such a fact-specific inquiry, we grant wide latitude to the district court in making this determination." Trevizo v. Adams, 455 F.3d at 1162. In Johnson v. Gross, 125 F.R.D. 169 (W.D. Okla. 1989), the district court found that the plaintiffs' proposed class of twenty-eight individuals did not satisfy rule 23(a)(1), stating:

> Plaintiffs have made no showing that joinder of these 28 individuals, or the personal representatives of those deceased, would be impracticable. Indeed, more than that number of defendants have been joined in this very action. Potential classes of much larger numbers have been denied class certification for failure to satisfy Rule 23(a)(1). See, e.g., In re: Wheat Farmers Antitrust Class Action Litigation, No. 129 (J.P.M.D.L. June 25, 1979), aff'd. sub nom. Zinser v. Continental Grain Co., 660 F.2d 754 (10th Cir. 1981)(approximately 366 class members located in three states); Bennett v. United States, 266 F. Supp. 627, 629 (W.D. Okla. 1965)(potential class of "all residents and property owners in metropolitan Oklahoma City" held to be "not so numerous as to require a class action"). The Court finds that it would not be impracticable to join all potential class members as plaintiffs in this action, and therefore the requirement of Rule 23(a)(1) is not satisfied.

Johnson v. Gross, 125 F.R.D. at 171. The Tenth Circuit affirmed the district court's holding that a class of twenty-eight members was too small to meet rule 23(a)(1)'s numerosity requirement. See Johnson v. Thompson, 971 F.2d 1487, 1498 (10th Cir. 1992)("Given our deferential standard of review, we cannot say that the court's decision was in error."). In Trevizo v. Adams, the Tenth Circuit affirmed the district court's holding that, "although the number of putative class members -- eighty-four -- was not insignificant, it was not such an overwhelmingly large number as to be prohibitive of joinder." 455 F.3d at 1162.

### b. Commonality.

Rule 23(a)(2) asks whether there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A finding of commonality requires only a single question of law or fact common to the entire class." DG v. Devaughn, 594 F.3d 1188, 1194 (10th Cir. 2010). The Tenth Circuit has explained: "Mere allegations of systemic violations of the law, however, will not

automatically satisfy Rule 23(a)'s commonality requirement; a discrete legal or factual question common to the class must exist."  DG v. Devaughn, 594 F.3d at 1194 (citing J.B. v. Valdez, 186 F.3d 1280, 1288 (10th Cir. 1999).

"[E]very member of the class need not be in a situation identical to that of the named plaintiff" to meet rule 23(a)(2)'s commonality requirements.  Milonas v. Williams, 691 F.2d 931, 938 (10th Cir. 1982)(citing Rich v. Martin Marietta Corp., 522 F.2d 333, 340 (10th Cir. 1975)).  "Factual differences between class members' claims do not defeat certification where common questions of law exist."  DG v. Devaughn, 594 F.3d at 1194 (citing Penn v. San Juan Hospital, Inc., 528 F.2d 1181, 1189 (10th Cir. 1975)).  In General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147 (1982), the Supreme Court held that a Mexican-American employee who was asserting a failure-to-promote claim could not represent a class of Mexican-American applicants who had failure-to-hire claims because the plaintiff did not satisfy rule 23(a)(2)'s commonality requirement. See 457 U.S. at 158 ("Respondent's complaint provided an insufficient basis for concluding that the adjudication of his claim of discrimination in promotion would require the decision of any common question concerning the failure of petitioner to hire more Mexican-Americans.").

"It is axiomatic that a plaintiff cannot maintain a class action when his interests are antagonistic to, or in conflict with, the interests of the persons he would seek to represent." Albertson's, Inc. v. Amalgamated Sugar Co., 503 F.2d 459, 463 (10th Cir. 1974).  One district court had held that commonality will not be found when "the alleged common issues can only be reached by making factual determinations that will be different for each class member."  Allen v. Holiday Universal, 249 F.R.D. 166, 176 (E.D. Pa. 2008).

        **c.**      **Typicality.**

The Supreme Court has noted that "[t]he commonality and typicality requirements of

Rule 23(a) tend to merge." Gen. Tele. Co. of the Southwest v. Falcon, 457 U.S. at 157 n.13.

Rule 23(a)(3) requires the claims of named plaintiffs to be typical of the claims of the class they

seek to represent. See DG v. Devaughn, 594 F.3d 1188, 1198 (10th Cir. 2010); Fed. R. Civ. P.

23(a)(3). The interests and claims of named Plaintiffs and proposed class members need not be

identical to satisfy typicality. See Anderson v. City of Albuquerque, 690 F.2d 796, 800

(10th Cir. 1982). "Provided the claims of Named Plaintiffs and class members are based on the

same legal or remedial theory, differing fact situations of the class members do not defeat

typicality." DG v. Devaughn, 594 F.3d at 1198 (citing Adamson v. Bowen, 855 F.2d 668, 676

(10th Cir. 1988)). "[L]ike commonality, typicality exists where . . . all class members are at risk of

being subjected to the same harmful practices, regardless of any class member's individual

circumstances." DG v. Devaughn, 594 F.3d at 1199. See Milonas v. Williams, 691 F.2d at 938

(finding commonality and typicality where all members of class were in danger of being subjected

to certain disciplinary practices regardless of their individual differences).

       In Delsing v. Starbucks Coffee Corp., No. 08-1154, 2009 U.S. Dist. LEXIS 90962

(D. Minn. Sept. 30, 2009), the Honorable Patrick J. Schiltz, United States District Judge for the

District of Minnesota, found that the proposed class of Starbucks employees should not be certified

because the interests of the named plaintiffs -- former Starbucks employees -- were opposed to the

interests of many current Starbucks employees who were included in the proposed class, and

therefore the claims of the class representatives did not typify the claims of other class members.

See 2009 U.S. Dist. LEXIS 90962, at *8 (stating that the claims of class representatives "cannot

typify claims of other class members if the class representatives and class members have conflicting

interests"). Judge Schiltz stated:

       No matter how the issue is characterized, the Court agrees that class certification is

-16-

inappropriate in this case because the interests of plaintiffs are directly opposed to the interests of at least a substantial portion of the proposed class.  To assess when such intra-class antagonism renders a proposed class representative's claims atypical or otherwise renders the proposed class representative inadequate, courts must look carefully at each case's facts.  Because the inquiry is so fact-specific, it is hard to generalize about how much intra-class conflict is too much conflict for class-certification purposes.

The conflict in this case, however, is palpable.  Under the challenged tip-sharing procedure, some employees come out ahead, and others come out behind. Indeed, the essential purpose and the inevitable function of Starbucks's tip-sharing policy is to redistribute wealth: Employees who work shifts when tips are plentiful -- because the shift is particularly busy, or because the workers are particularly skilled, or because the customers are particularly generous -- end up subsidizing employees who work shifts during which tips are scarce.

2009 U.S. Dist. LEXIS 90962, at **8-9.

### d.    Adequacy.

To protect the due-process interests of unnamed class members -- who are bound by any judgment in the action -- rule 23(a)(4) requires that the named representative provide fair and adequate protection for the class' interests.  See Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 379 n.5 (1996); Lile v. Simmons, 143 F. Supp. 2d 1267, 1277 (D. Kan. 2001)("Due process requires that the Court 'stringently' apply the competent representation requirement because class members are bound by the judgment (unless they opt out), even though they may not actually be aware of the proceedings.").  The Tenth Circuit has identified two questions relevant to the adequacy of representation inquiry: (i) whether the named plaintiffs and their counsel have any conflicts with other class members; and (ii) whether the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class.  See Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187-88 (10th Cir. 2002).  In considering this second question, the experience and competence of the attorney representing the class may inform the court's analysis.  See Lopez v. City of Santa Fe, 206 F.R.D. 285, 289-90 (D.N.M. 2002)(Vazquez, J.).

-17-

The Supreme Court "has repeatedly held [that] a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." E. Tex. Motor Freight Sys. Inc. v. Rodriguez, 431 U.S. 395, 403 (1977)(quoting Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 216 (1974)).  Courts have found that intraclass conflicts "may negate adequacy under Rule 23(a)(4)."  Langbecker v. Elec. Data Sys. Corp., 476 F.3d 299, 315 n.28 (5th Cir. 2007)(holding that the district court erred in certifying a class without evaluating intraclass conflicts).  See Pickett v. Iowa Beef Processors, 209 F.3d 1276, 1280 (11th Cir. 2000)(finding that representation was inadequate where the class included those "who claim harm from the very acts from which other class members benefitted"); Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 344 (4th Cir. 1998)(holding that the current franchisees who had an interest in the continued viability of the franchiser had an inherent conflict with former franchisees whose only interest was in the maximization of damages); Alston v. Va. High Sch. League, Inc., 184 F.R.D. 574, 579 (W.D. Va. 1999)(holding that a class of all high school female athletes could not be certified -- even if the alleged conduct of the defendant school system was discriminatory -- when some female athletes did not share the same goals or interests as the named female plaintiffs because those unnamed female athletes were satisfied with and/or benefitted from the alleged discriminatory treatment).

On the other hand, "only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.  Beyond that straightforward proposition, defining the level of antagonism or conflict that should preclude class certification is a more difficult proposition."  7A C. Wright, A. Miller & M. Kane, Fed. Prac. & Proc. § 1768 at 389-93 (3d ed. 2005). "Though a plaintiff cannot be an adequate representative if he or she has a conflict of interest with class members, not every potential disagreement between a class representative and

the class members will stand in the way of a class suit."  1 A. Conte & H. Newberg, <u>Newberg on</u> <u>Class Actions</u> § 3:26 at 433-34.

In <u>Slader v. Pearle Vision, Inc.</u>, No. 00-2797, 2000 U.S. Dist. LEXIS 16453 (S.D.N.Y. Nov. 14, 2000), the Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, held that an employment-discrimination class consisting of current and former employees could not be certified because "the interests of . . . two former employees are, if anything, quite likely in conflict with the interests of current employees, for a former employee's primary interest necessarily centers on recovering back pay, while a current employee may well be far more interested in obtaining injunctive relief."  2000 U.S. Dist. LEXIS 16453, at *2. Judge Rakoff reasoned: "To allow former employees to represent current employees in such situations comes close to denying the latter due process." 2000 U.S. Dist. LEXIS 16453, at *2.

### 2.    The Three Categories of Rule 23(b) Class Actions Suits.

Once the court finds that the threshold requirements have been met, "it must then examine whether the class falls within at least one of three categories of suits set forth in Rule 23(b)." <u>Adamson v. Bowen</u>, 855 F.2d at 675.  <u>See</u> <u>DG v. Devaughn</u>, 594 F.3d at 1199 ("In addition to satisfying Rule 23(a)'s requirements, the class must also meet the requirements of one of the types of classes described in subsection (b) of Rule 23.").  Rule 23(b) provides that a class action is appropriate if the threshold requirements are satisfied, and the case falls into one or more of three categories.  Only one of rule 23(b)'s subdivisions must be satisfied to meet the class-action requirements.  <u>See</u> <u>Carpenter v. Boeing, Co.</u>, 456 F.3d 1183, 1187 (10th Cir. 2006)(stating that the district court must determine whether a suit "falls within one of the categories of actions maintainable as class actions, <u>see</u> [Fed. R. Civ. P.] 23(b)."); <u>Eatinger v. BP Am. Prod. Co.</u>, No. 07-1266, 2010 U.S. Dist. LEXIS 78352, at *6 (D. Kan. Aug. 2, 2010)("After meeting these [rule

23(a)] requirements, Plaintiffs must demonstrate that the proposed class action fits within one of the categories described in Rule 23(b).").

        **a.**      **Rule 23(b)(1).**

Rule 23(b)(1) describes the first category of class actions and includes cases in which:

> the prosecution of separate actions by . . . an individual member of the class would create a risk of (A) inconsistent or varying adjudications . . . which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications . . . which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1).  Subsection (1)(A) focuses on the risk of separate adjudications to the nonclass party, and is satisfied when separate actions would result in inconsistent adjudications, whereas subsection (1)(B) focuses on the risk of separate actions to the individual potential class members, and applies when adjudications against individual members of the class would be dispositive of the interests of the other members not parties to the adjudications.  See Weinman v. Fid. Capital Appreciation Fund, 354 F.3d 1246, 1263 n.6 (10th Cir. 2004).  Unlike a rule 23(b)(3) class, which enables potential members of a class to opt-out, a class certified under rule 23(b)(1) does not provide such opt-out rights.  See Weinman v. Fid. Capital Appreciation Fund, 354 F.3d at 1266 ("The court's decision was in accord with a general preference for certifying defendant classes under 23(b)(1) or (b)(2) rather than (b)(3) in order to promote judicial economy and prevent the class action device from becoming ineffective as a result of numerous opt-outs by individual defendants.").  "Certification under Rule 23(b)(1), however, is normally not appropriate when significant monetary damages are sought because due process requires class members be given the opportunity to opt out of the action."  Cox v. Allstate Ins. Co., No. CIV 07-1449, 2009 U.S. Dist. LEXIS 73518, at *12 (W.D. Okla. Aug. 19, 2009)(citing Phillips Petroleum Co. v. Shutts, 472 U.S.

797, 811 n.3 (1985)).

> ### b.    Rule 23(b)(2).

A second category of cases, set out in rule 23(b)(2), establishes an appropriate class as one in which "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole." As the Tenth Circuit explained in Shook v. Board of County Commissioners, 543 F.3d 597 (10th Cir. 2008), rule 23(b)(2) "imposes two independent, but related requirements" upon those seeking class certification.  543 F.3d at 604.

> In the first place, the defendants' actions or inactions must be based on grounds generally applicable to all class members.  The second requirement is more restrictive, and it is on this aspect of the Rule that we affirm the district court's ruling.  The latter half of Rule 23(b)(2) requires that final injunctive relief be appropriate *for the class as a whole*.  The rule therefore authorizes an inquiry into the relationship between the class, its injuries, and the relief sought, and we have interpreted the rule to require that a class must be amenable to uniform group remedies.  Put differently, Rule 23(b)(2) demands a certain cohesiveness among class members with respect to their injuries, the absence of which can preclude certification.

543 F.3d at 604 (internal quotations and citations omitted).  Factually different claims of individual class members "should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy."  Adamson v. Bowen, 855 F.2d at 676.  A rule 23(b)(2) class action is inappropriate where the relief sought is primarily monetary damages.  See Monreal v. Potter, 367 F.3d at 1236 (holding that the district court did not abuse its discretion in denying class certification because it found that the relief sought was primarily monetary damages); Fed. R. Civ. P. 23 advisory committee's note ("[Subdivision (b)(2)] does not extend to cases in which the appropriate relief relates exclusively or predominantly to money damages.").

c.      **Rule 23(b)(3).**

To satisfy rule 23(b)(3), the court must find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).   Rule 23(b)(3) instructs that the court should consider: (i) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the difficulties likely to be encountered in the management of a class action.  See Fed. R. Civ. P. 23(b)(3)(A)-(D).

The predominance criterion of rule 23(b)(3) is "far more demanding" than rule 23(a)(2)'s commonality requirement.  See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623-24 (1997); Monreal v. Potter, 367 F.3d 1224, 1237 (10th Cir. 2004)("Although we do not rest our decision upon Rule 23(a), cases that interpret that the commonality requirement of Rule 23(a) illustrate the instant Plaintiffs' inability to satisfy Rule 23(b)(3)'s "far more demanding" requirement that common issues predominate.").  In Monreal v. Potter, the Tenth Circuit found: "The myriad discriminatory acts that Plaintiffs allege (e.g., failure to promote, failure to train, unequal pay, disrespectful treatment, etc.) each require independent legal analysis, and similarly challenge the predominance requirement of Rule 23(b)(3) if not also the commonality requirement of Rule 23(a)."  367 F.3d at 1237.

**3.      Subclasses.**

Rule 23(c)(5) provides: "When appropriate, a class may be divided into subclasses that are each treated as a class under this rule."  A district court may suggest subclassing, but it has no obligation to do so.  See U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 408 (1980);

Fincher v. Prudential Prop. & Cas. Ins. Co., No. 08-1109, 2010 U.S. App. LEXIS 8134, at *38 (10th Cir. Apr. 20, 2010). Moreover, even if a court determines subclassing is appropriate, the party seeking class certification bears the burden of constructing subclasses and "is required to submit proposals to the court." U.S. Parole Comm'n v. Geraghty, 445 U.S. at 408.

        **4.**      **The Merits are Not Considered on a Motion for Class Certification.**

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Anderson v. City of Albuquerque, 690 F.2d 796, 799 (10th Cir. 1982). See Vallario v. Vandehey, 554 F.3d 1259, 1267 (10th Cir. 2009)("We, of course, adhere to the principle that class certification does not depend on the merits of a suit."). "[N]othing in either the language or history of Rule 23 . . . gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974). Even though "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," the court's sole responsibility at this stage is to "carefully apply the requirements of Rule 23(A)." Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 160 (1982). See Anderson v. City of Albuquerque, 690 F.2d at 799.

## ANALYSIS

The Plaintiffs have the burden of meeting all of rule 23(a)'s requirements for the Court to find that certifying a class in this suit is appropriate. The Court concludes that the Plaintiffs cannot meet all of the requirements for class certification under rule 23 with the class they propose. Specifically, the Court believes that there is a conflict of interest between the former 311-CCC employees and the current 311-CCC employees, such that the Plaintiffs do not meet the

requirements of rule 23(a)(3) and rule 23(a)(4).  A class of only former 311-CCC employees would meet these requirements; however, the Court finds that twenty-seven former employees is too few to meet the numerosity requirement in rule 23(a)(1).  Moreover, the Plaintiffs do not ask the Court to create a subclass of current employees or certify only a class of current employees.  The Court therefore will deny the motion for class certification.

I.   **THE PLAINTIFFS' PROPOSED CLASS ACT DOES NOT MEET ALL THE REQUIREMENTS OF RULE 23(a).**

"Rule 23(a) requires an analysis of four elements which are preconditions to class certification: numerosity, commonality, typicality, and adequacy of the named parties to represent the class."  Shook v. El Paso County, 386 F.3d at 968.  The Court finds that the Plaintiffs' proposed class does not meet all of rule 23(a)'s requirements.  Moreover, a class of only terminated 311-CCC employees would not meet all of the requirements of rule 23(a).

A.   **THE CONFLICT OF INTEREST BETWEEN THE FORMER 311-CCC EMPLOYEES AND THE CURRENT 311-CCC EMPLOYEES DEFEATS THE TYPICALITY AND ADEQUACY REQUIREMENTS.**

Rule 23(a)(2) asks whether there are "questions of law or fact common to the class," and, despite rule 23(a)(2)'s use of the word "questions," the Tenth Circuit has held that commonality requires only a single question of law or fact common to the entire class.  See DG v. Devaughn, 594 F.3d at 1194 ("A finding of commonality requires only a single question of law or fact common to the entire class."); J.B. v. Valdez, 186 F.3d 1280, 1288 (10th Cir. 1999)("As the district court observed, commonality requires only a single issue common to the class.")(internal quotations omitted).  See also Harrington v. City of Albuquerque, 222 F.R.D. 505, 509 (D.N.M. 2004) (Hansen, J.)("Although this provision of the rule is written in the plural, commonality requires only a single issue common to the class.")(internal quotations and citation omitted).  The Plaintiffs

contend that there are two common questions of law and fact: (i) whether the Plaintiffs and the proposed class members have a reasonable expectation of continued employment and a right to a hearing concerning disciplinary action against them; and (ii) whether they are entitled to declaratory and injunctive relief and equitable remedies, including reinstatement and back pay, incidental to that relief. See Plaintiffs' Memo. at 6. The Defendants conceded at the class certification hearing that the named Plaintiffs share a common question of law with the proposed class -- are 311-CCC employees "classified" employees, such that they have a property interest in their employment? The Court agrees that this is a common question of law, and perhaps a mixed question of law and fact, among the proposed class.

The Defendants argue, however, that current employees do not have the same interest in being declared classified as former employees and as the Plaintiffs do, because the current employees receive a benefit for being unclassified employees -- they receive higher pay. It might be in the interest of each of the class representatives and the other former employees to become classified employees. Presumably, the classified employees would have been entitled to a pre-termination hearing. On the other hand, it appears to be against the current employees' pecuniary interests to become classified. Thus, it is against their pecuniary interest to seek declaratory or injunctive relief stating that they are classified employees. The Plaintiffs and other terminated employees have something else to gain in addition to the right to a hearing -- reinstatement and back pay -- remedies inapplicable to the current employees. The Defendants contend that the conflict destroys the typicality of the Plaintiffs' claims with the proposed class. The Court agrees.

The proposed class is comprised of twenty-seven terminated 311-CCC employees and sixty-two current employees. The nine named Plaintiffs are all terminated employees. The bulk of the proposed class members -- over two-thirds of the proposed class, i.e., the current employees --

do not seek reinstatement and back pay, because they are, in fact, still employed by the City of Albuquerque. It is unclear what relief these employees would be seeking if the Court certified the proposed class. Rule 23(a)(3) requires the claims of named plaintiffs to be typical of the claims of the class they seek to represent. See DG v. Devaughn, 594 F.3d at 1198; Fed. R. Civ. P. 23(a)(3). The interests and claims of named Plaintiffs and proposed class members does not have to be identical to satisfy typicality, but the claims must be based on the same legal or remedial theory. See DG v. Devaughn, 594 F.3d at 1198; Anderson v. City of Albuquerque, 690 F.2d at 800. Here, not only are the current employees not seeking the remedies of reinstatement and back pay, but it is also doubtful whether they are interested in giving up their higher pay to become classified employees. Because the interests of the Plaintiffs are likely opposed to the interests of many current 311-CCC employees in the proposed class, and the current employees make up more than two-thirds of the proposed class, the Plaintiffs' claims do not typify the claims of other class members and the conflict destroys commonality. See Delsing v. Starbucks Coffee Corp., 2009 U.S. Dist. LEXIS 90962, at *8 (stating that "the Court agrees that class certification is inappropriate in this case because the interests of plaintiffs are directly opposed to the interests of at least a substantial portion of the proposed class"); Slader v. Pearle Vision, Inc., 2000 U.S. Dist. LEXIS 16453, at *2 (stating that "the interests of . . . two former employees are, if anything, quite likely in conflict with the interests of current employees, for a former employee's primary interest necessarily centers on recovering back pay, while a current employee may well be far more interested in obtaining injunctive relief.").

> Generally, if the representatives' interests are coextensive with those of the rest of the class, they will not be viewed as antagonistic, a key factor in determining the adequacy of representation. . . . Coextensiveness has also been viewed as part of the requirement in Rule 23(a)(3) that the claims of the representatives be typical of those of the absent class members. Thus, courts have noted that coextensiveness is a

common thread binding Rule 23(a)(3) and Rule 23(a)(4) together.

7A C. Wright, A. Miller & M. Kane, <u>Fed. Prac. & Proc.</u> § 1768 at 389-93.

The Plaintiffs argue that the Defendants' contention that there is a conflict of interest between the former 311-CCC employees and the current 311-CCC employees "is based on the unsupportable contention that 311-CCC personnel who are still employed, albeit without any of the protections or rights of 'classified' employees, are a different and incompatible class that the employees who have already been fired without notice or hearings." Plaintiffs' Reply at 6. The Plaintiffs appear to try to place the burden on the Defendants to show that the interests of current employees are in tension with the interests of former employees. The burden remains, however, on the Plaintiffs, as the party seeking to certify a class, to prove that there is not a conflict of interest among the proposed class members. See <u>Fincher v. Prudential Prop. & Cas. Ins. Co.</u>, 2010 U.S. App. LEXIS 8134, at *36; <u>Shook v. El Paso County</u>, 386 F.3d at 368. The Plaintiffs did not submit any affidavits from current employees representing that they desire to become classified employees and would be willing to give up the higher pay they receive as unclassified employees for a change in status that entitles them to a property interest in their jobs. Nor did the Defendants submit affidavits stating current employees do not want to become classified. The Court understands the Defendants' reluctance, given some of the case law that is out there, to solicit affidavits from potential class members, and risk a perception that they were attempting to intimidate or influence those employees' interest in a class action. See, e.g., <u>County of Santa Clara v. Astra USA, Inc.</u>, No. C 05-3740, 2010 U.S. Dist. LEXIS 78312, at *14 (N.D. Cal. July 8, 2010)("Examples of communications that may warrant restraint include efforts by a defendant to encourage potential class members not to participate in the class action, thereby reducing potential liability."); <u>Roslies-Perez v. Superior Forestry Serv.</u>, 652 F. Supp. 2d 887, 894 (M.D. Tenn. 2009)("Absent any

legitimate justification for [the defendant's] presence, the Court deems [the defendant's] behavior to be a clear effort to intimidate and threaten potential class members and witnesses who may have been interested in speaking to Plaintiffs' counsel"); Sjoblom v. Charter Commc'ns, LLC, 07-cv-451, 2008 U.S. Dist. LEXIS 11660, at *6 (W.D. Wis. Feb. 14, 2008)("To protect potential class members from future coercion or intimidation, the court ordered defendants to obtain the court's approval before contacting or communicating with potential class members in this action."); Manual for Complex Lit. § 21.12 (4th ed. 2004)("Defendants and their counsel generally may communicate with potential class members in the ordinary course of business, including discussing settlement before certification, but may not give false, misleading, or intimidating information, conceal material information, or attempt to influence the decision about whether to request exclusion from a class certified under Rule 23(b)(3).").  Nevertheless, the reality is that the record is silent about what the current employees want and the Plaintiffs bear the burden of showing lack of conflict.

The Tenth Circuit has stated that "[i]t is axiomatic that a plaintiff cannot maintain a class action when his interests are antagonistic to, or in conflict with, the interests of the persons he would seek to represent."  Albertson's, Inc. v. Amalgamated Sugar Co., 503 F.2d at 463.  Because of the conflict of interest between the Plaintiffs and over two-thirds of the proposed class, the Court also finds that the Plaintiffs fail to meet rule 23(a)(4)'s adequacy requirement.  The Tenth Circuit has identified two questions relevant to the adequacy-of-representation inquiry: (i) whether the named plaintiffs and their counsel have any conflicts with other class members; and (ii) whether the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class.  See Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d at 1187-88.  While the Court does not question the experience and competence of Mr. Livingston representing the class, the named Plaintiffs have a conflict with other class members.  The conflict between the current employees and the Plaintiffs

negates the Plaintiffs' and attorney Mr. Livingston's adequacy under rule 23(a)(4) to represent the class that they propose.  See Langbecker v. Elec. Data Sys. Corp., 476 F.3d at 315 n.28 (finding that intraclass conflicts "may negate adequacy under Rule 23(a)(4)"); Pickett v. Iowa Beef Processors, 209 F.3d at 1280 (finding that representation was inadequate where the class included those "who claim harm from the very acts from which other class members benefitted").  The Supreme Court "has repeatedly held [that] a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."  E. Tex. Motor Freight Sys. Inc. v. Rodriguez, 431 U.S. at 403.  The Plaintiffs also expressed no interest in subclasses or getting a separate counsel for current employees, but preferred joinder.  Because the Plaintiffs do not possess the same interests at current 311-CCC employees, the Court finds that they fail to satisfy rule 23(a)(4).

### B.   THE NUMBER OF TERMINATED EMPLOYEES IS NOT SO NUMEROUS THAT JOINDER OF ALL MEMBERS IS IMPRACTICABLE.

Although the Court finds that the Plaintiffs' proposed class does not satisfy rule 23(a)'s requirements, a class of all terminated 311-CCC employees would satisfy the requirements of commonality, typicality, and adequacy.  The conflict of interest does not pose a problem between the Plaintiffs and other terminated employees, and they share an interest in declaratory and injunctive relief, including reinstatement, and an interest in receiving back pay, if it is determined that they are classified employees.  The Plaintiffs represent that there are twenty-seven terminated 311-CCC employees.  There is no dispute that the members of the proposed class are readily identified from City of Albuquerque records.

Rule 23(a)(1) asks whether "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The Tenth Circuit has stated that there is "no set formula"

to determine whether the numerosity requirement is met; instead it is a fact-specific inquiry best left to the discretion of the district court.  Rex v. Owens, 585 F.2d at 436; Trevizo v. Adams, 455 F.3d at 1162 ("Indeed, because it is such a fact-specific inquiry, we grant wide latitude to the district court in making this determination.").  While eighty-nine present and former 311-CCC employees is probably numerous enough, twenty-seven is a borderline number.  While twenty-seven might, in other circumstances, satisfy the numerosity requirement, the Court does not believe that twenty-seven readily-identifiable individuals here is an impracticable number of individuals to join as plaintiffs.  See Johnson v. Thompson, 971 F.2d at 1498 (affirming the district court's finding that twenty-eight individuals did not satisfy rule 23(a)(1) because the plaintiffs did not show that joinder would be impracticable).  Moreover, at the class certification hearing, Mr. Livingston represented to the Court that, if the class were comprised of only the twenty-seven terminated employees, it would not be worth conducting the case as a class action.  He stated that joinder would be a preferable method, if the Court grants the Plaintiffs leave to join additional plaintiffs.  See Tr. at 9:15-10:10 ("MR. LIVINGSTON:  Well, I think essentially, Your Honor, I would agree with you, that 27 is too small a class to make it worth being a class action. . . .  I think we would pursue it individually if we could have an opportunity to join some additional people that would probably satisfy us.").  Exercising its discretion, the Court therefore finds that a class of only the terminated 311-CCC employees does not satisfy rule 23(a)(1) and the Court will not certify such a class.

## II.   THE PROPOSED CLASS DOES NOT SATISFY RULE 23(b) BUT A CLASS OF FORMER 311-CCC EMPLOYEES WOULD SATISFY RULE 23(b).

The Plaintiffs originally argued that the proposed class satisfied all three categories of rule 23(b).  In their reply, however, they argue that the proposed class would only satisfy 23(b)(2)'s and 23(b)(3)'s requirements.  The Court, however, will address whether the proposed class would

satisfy any of rule 23(b)'s requirements.

A rule 23(b)(1) class action establishes an appropriate class as one in which either (i) there is a risk of separate adjudications to the non-class party, and separate actions would result in inconsistent adjudications, see rule 23(b)(1)(A); or (ii) where adjudications would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests, see rule 23(b)(1)(B). In their memorandum in support of the motion for class certification, the Plaintiffs argue that adjudication of individual claims of the proposed class members "would be expensive and would add nothing to the claims already being asserted by Plaintiffs." Plaintiffs' Memo. at 7. They also argue that the prosecution of separate actions by similarly-situated employees and former employees would create the risk of inconsistent adjudications, and would present the possibility that the City of Albuquerque would be subjected to inconsistent and incompatible standards of conduct with respect to 311-CCC employees. See id. at 7-8. The Defendants argue that the Plaintiffs' proposed class does not meet rule 23(b)(1)'s requirements. As the Court discussed in assessing whether the proposed class satisfies rule 23(a), the relief that the Plaintiffs seek is not appropriate for the class as a whole, because the interests that the rule 23(b)(1) class action seeks to protect are not the same for former 311-CCC employees, like the named Plaintiffs, and for current 311-CCC employees. Because there is a conflict of interest between the current employees and the former employees, adjudications against individual members would not be dispositive of the interests of current employees. The Court believes the risk of inconsistent adjudications would be an important consideration if the proposed class were composed solely of former 311-CCC employees, as former employees have a common interest in being deemed classified employees and having their employment reinstated, and the Court would likely certify a 23(b)(1) class of former 311-CCC employees. The Plaintiffs'

proposed class, however, does not satisfy the requirements under rule 23(a) and thus does not meet the requirements for a rule 23(b)(1) class, because the alleged issues about which the proposed class is concerned are not commonly shared among all members of the proposed class.

A 23(b)(2) class action establishes an appropriate class as one in which "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2). A rule 23(b)(2) class has two requirements: (i) the defendants' actions or inactions must be based on grounds generally applicable to all class members; and (ii) final injunctive relief must be appropriate for the class as a whole.  See Shook v. Board of County Comm'rs, 543 F.3d at 604.  The Defendants' actions or inaction are based on grounds generally applicable to all class members, but, as the Court discussed in assessing whether the proposed class satisfies rule 23(a), the relief a 23(b)(2) class provides that the Plaintiffs seek is not appropriate for the class as a whole.  The pecuniary conflict of interest between the Plaintiffs and current employees renders the injunctive relief inappropriate for all current employees.  Moreover, a rule 23(b)(2) class does not have a required opt-out provision, so current employees who wish to remain a higher-paid unclassified employee would not be able to opt-out of the Plaintiffs' class action seeking declaratory and injunctive relief requiring that 311-CCC employees be deemed classified.  The Plaintiffs' proposed class, therefore, does not satisfy rule 23(b)(2).  The Court notes, however, that a class of only terminated employees would satisfy rule 23(b)(2), as the Defendants' actions -- denying the Plaintiffs and other terminated employees a property interest in their employment -- applies to all class members, and final injunctive relief would be appropriate for the class of terminated employees as a whole.

The Plaintiffs' proposed class also does not satisfy rule 23(b)(3).  To satisfy rule 23(b)(3),

the court must find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  The predominance criterion of rule 23(b)(3) is "far more demanding" than rule 23(a)(2)'s commonality requirement.  See Amchem Prods., Inc. v. Windsor, 521 U.S. at 623-24; Monreal v. Potter, 367 F.3d at 1237 ("Although we do not rest our decision upon Rule 23(a), cases that interpret that the commonality requirement of Rule 23(a) illustrate the instant Plaintiffs' inability to satisfy Rule 23(b)(3)'s 'far more demanding' requirement that common issues predominate.").  As the Court discussed in determining whether the Plaintiffs' proposed class satisfies rule 23(a), there is a conflict of interest between the current employees and the Plaintiffs. While there is a predominating common question affecting the proposed class -- whether the 311-CCC employees are classified -- the Court believes that the proposed class, with its single counsel, is not superior to other methods, such as joinder or subclasses with separate counsel. Additionally, the former employees have wrongful termination claims, and some have additional individual claims.  The common due process claim, thus, does not predominate over questions affecting individual members, and therefore the proposed class does not meet rule 23(b)(3)'s predominance criterion.   The Plaintiffs' proposed class thus does not meet rule 23(b)(3)'s predominance criterion.  The divergent interests of the proposed class render a rule 23(b)(3) class inappropriate.  The Court notes, however, that a class of only terminated employees would satisfy the requirements of rule 23(b)(3), because common questions regarding whether they have a property interest entitling them to reinstatement and back pay predominate.  A class of only terminated employees, however, may not satisfy the numerosity requirement.

**III.    THE COURT WILL GRANT THE PLAINTIFFS LEAVE TO AMEND THE COMPLAINT TO JOIN ADDITIONAL PLAINTIFFS.**

The current named Plaintiffs are nine terminated 311-CCC employees.  To the Plaintiffs' knowledge, there are an additional eighteen terminated 311-CCC employees who may be interested in joining in this action.  Because the Court finds that a class is inappropriate, and that it is not impracticable to join the other potential plaintiffs, the Court believes it is appropriate to grant the Plaintiffs time to join additional terminated employees.  At the class certification hearing, the Defendants represented that they did not oppose the Court giving the Plaintiffs time to add additional plaintiffs.  The leave to amend is limited to adding new plaintiffs and claims for the new plaintiffs.  The Court is not granting leave for the current plaintiffs to add additional claims.  The Plaintiffs have thirty days from this Order to file an Amended Complaint or Notice of Joinder adding additional plaintiffs.

**IT IS ORDERED** that the Plaintiffs' Motion for Class Action Certification is denied.  The Plaintiffs have thirty days to amend to join new plaintiffs.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Paul Livingston
Placitas, New Mexico

     *Attorney for the Plaintiffs*

Robert M. White
  City Attorney
Michael I. Garcia
  City of Albuquerque Legal Department
Albuquerque, New Mexico

-34-

-- and --

Edward W. Bergmann
Laura Reasons
Seyfarth Shaw, LLP
Chicago, Illinois

*Attorneys for the Defendants*